## COMMONWEALTH *vs.* WILLIAM VAN STONE.

Evidence that a defendant kept a house containing a bar-room, and persons had been often seen to enter the house sober and come out drunk; that on Sundays the place was of great resort, and on one Sunday there were at one time twenty-five or thirty men and women on the premises, some of them taking meals, almost all of them intoxicated, and many of them profane and noisy; that on this Sunday officers having a warrant to search the premises were disturbed by this company and forcibly resisted by one man when attempting to enter the bar-room, which they found furnished with a stock of intoxicating liquors and the implements customary for compounding and serving intoxicating drinks; and that the defendant, who was present and was accosted by the officers, denied to them his identity; is sufficient evidence to warrant a jury in finding that the defendant was a common seller of intoxicating liquor.

INDICTMENT for being a common seller of intoxicating liquor. At the trial in the superior court, before *Vose*, J., there was evidence that William C. Thomas and Charles H. Morton, two state deputy constables, with Horatio N. Kimball, a deputy sheriff, all of whom were witnesses for the government, went, with a search warrant, on Sunday, May 19, 1867, to the defendant's place in Dartmouth, which was a house containing a kitchen, dining-room, sitting-room, and other rooms, and also a

bar-room; that, when they arrived, there were twenty-five or thirty men and women on the premises, some of whom were eating dinner, and almost all of whom were intoxicated, some being so drunk that they could not walk straight, and many using profane language and being very noisy; that there were also carriages there, some of which were immediately driven away; that the defendant was present, and wore an apron and carried a tray in his hand; and that, being accosted by Thomas and asked if he was Mr. Van Stone, he replied: " No, Mr. Van Stone has gone away." These witnesses further testified that they then proceeded to search the premises, the company present being very noisy meanwhile, and disturbing them during the search; and that when attempting to enter the bar-room they were resisted by a man behind the door, which was fastened against them by a knife inserted over the latch; that they broke open the door, and found, within, a bar with the usual furniture, including decanters ranged on shelves, and containing various kinds of intoxicating liquors, tumblers turned over upon a dripping-pan, and toddy-sticks, and also found there one barrel full of ale, and another part full, and a keg containing four or five gallons of rum, and in other parts of the house found ten gallons of sherry wine, and other liquors of the value of about one hundred and fifty dollars. It appeared also by the testimony of Morton that the defendant called on him the next day at Fall River, and said that his name was Van Stone and that he kept the place which they had searched, and asked if there was a warrant against him, and said that he thought it was rather hard, for he had been there only a fortnight and had not got settled. And Thomas testified that on the day after that, he visited again the place of the defendant, who said he was sorry that he was not at home when the witness came there on Sunday, and was sorry that the boys were noisy, but that they thought they were doing him a favor. Another witness for the government was Job Chase, who testified that he lived within twenty rods of the defendant's place; that the defendant came there during the latter part of April, when the former proprietor moved out; and that then " drunkenness commenced;" that since that time he had

seen people drunk there quite often, and had seen them go in sober and come out "with a brick in their hats;" but that he had never been in the house, nor had seen liquors sold there; that he saw one Barnum Lincoln "go in and out of it for a week or ten days drunk every day;" that he saw one Charles Tripp go in sober, and come out afterwards to the witness's house foolishly drunk; that on Sunday, May 12, and Sunday, May 19, he saw persons go in sober and come out drunk, but that he "did n't know about seeing them week days; there was but little company there week days." This was all the material evidence in the case.

The defendant asked the judge to instruct the jury that there was not sufficient proof to sustain the charge that the defendant was a common seller; but the judge declined so to rule, and submitted the case to the jury with the following instructions, to which no exception was taken: "That the burden of proof was on the government to show that the defendant, by himself or agent, had made at least three several and distinct sales of intoxicating liquors, either to the same or to different persons, during the time covered by the indictment; and, if the place was a place of common resort, or a place other than a private dwelling-house, a delivery of intoxicating liquors by the defendant, or by any one under his authority, to any person, would be *primâ facie* evidence of sale by him; and if upon the whole evidence they were satisfied beyond a reasonable doubt that the defendant, or any one authorized by him, had, during the period, made three several and distinct sales to different persons or to the same person, they would be warranted in finding the defendant guilty of the charge."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. Brown*, for the defendant.

*C. Allen*, Attorney General, for the Commonwealth, was not called upon.

BIGELOW, C. J. To say that the evidence offered in support of this indictment would not warrant a conviction, would be equivalent to a declaration that a person could not be found

guilty of an offence such as is charged against the defendant on circumstantial evidence only. But in criminal as well as in civil cases a verdict may well be founded on circumstances alone, provided the evidence of them excludes every other reasonable hypothesis but that of the guilt of the party charged. The facts proved at the trial of this case were of a nature to lead the minds of the jury to such a conclusion. The evidence was plenary, that the house was fitted up and prepared for the sale of intoxicating liquors to be drank on the premises, and although there was no direct proof of sales of liquor, the circumstances under which persons resorted thither during the period of time alleged in the indictment, and their condition and conduct when there, and immediately after leaving, admit of no reasonable doubt that liquor was sold to and consumed by them on the premises. *Exceptions overruled.*