WILLIAM H. DOLAN ET AL. V. ROSA MCLAUGHLIN ET AL.

FILED JUNE 16, 1896.   No. 5901.

1. **Intoxicating Liquors:** ACTION ON SALOON-KEEPERS' BONDS. The conclusions announced in the former opinion in this case, reported in 46 Neb., 449, approved and adhered to, and, having been there stated in the syllabus to the opinion, need not and will not be here restated.

2. ———: ———. The decision in the case of *Curran v. Percival*, 21 Neb., 434, examined and distinguished.

REHEARING of case reported in 46 Neb., 449.

*G. M. Lambertson, F. M. Hall,* and *E. N. Kauffman,* for plaintiffs in error.

*Alfred Hazlett, W. C. Le Hane,* and *Griggs; Rinaker & Bibb, contra.*

HARRISON, J.

Rosa McLaughlin, in her own behalf as widow of John McLaughlin, and also for the minor children of John McLaughlin, instituted this action in the district court of Gage county against certain retail liquor dealers and their sureties on the bonds executed as required by the provisions of chapter 50 of the Compiled Statutes, entitled "Liquors." William H. Dolan of plaintiffs in error and the sureties on his bond were not of the original parties to the suit, but subsequently to its commencement were made parties defendants therein. A judgment was rendered in the trial court against all defendants, and William H. Dolan and his bondsmen prosecuted proceedings in error to this court. The case was presented and heard and the determination of it was set forth in an opinion which has been reported in 46 Neb., 449, to which we refer for a statement of the issues and also some of the facts. We need not restate them here. After the opinion referred to was filed a motion for rehearing was made, which was sustained and a rehearing allowed. The case has been the second time argued and submitted. The conclusions reached on the points decided in the former opinion were stated in the syllabus thereto as follows: "Where, in a petition, it was alleged, and the proofs therewith corresponded, against two licensed saloon-keepers and the sureties on their bonds that the surviving members of a family have been deprived of their means of support by the death of the head of the family, which death took place while such head of the family was in a deranged and stupid state, superinduced by periods of intoxication at intervals extending over a period of five months' time,

the last of which period of intoxication had been two weeks after any liquor had been sold, and that to some of the fits of intoxication the principals contributed by sales of liquor, held a misleading error to instruct the jury that 'Where several liquor dealers furnish intoxicating liquor the use of which results in intoxication and damage, each dealer is equally liable, and that, in case one dealer furnishes the first draught while the user thereof is perfectly sober, and the liquor which intensified and completed the intoxication was furnished by other parties, the dealer furnishing the first draught is equally liable with the others for the damage resulting from such intoxication.' In an action for damages against licensed liquor dealers and the sureties on their bonds for loss of support caused by the death of the head of the family alleged to have been brought about by intoxicating liquors sold by such dealers, where there had been introduced evidence tending to show that at least one sale was of a liquid not intoxicating, it was erroneous to instruct the jury that, 'Where it is shown that the person was sold or furnished liquor at a licensed saloon, the presumption is that such liquor was intoxicating.' " The holding of this court as embodied in the first paragraph of the syllabus to the former opinion, and which we have just quoted, is at this time attacked as being contrary to what is and should be the law in the particulars involved. Preliminary to the consideration of the instruction referred to, Commissioner RYAN correctly stated in the former opinion that, "As we understand the petition, the death of John McLaughlin and the subsequent loss of support of his family are the facts from which the damage is claimed to have resulted. It is true that between October 20, 1890, and March 23, 1891, various sales of intoxicating liquors to John McLaughlin were alleged to have been made, but these sales were referred to simply as contributing to his being habitually intoxicated, and perhaps therefrom resulting his diseased condition. There was no claim that between March 23, 1891, and April 6 thereafter, which latter was

the day on which McLaughlin died, there had been sold to him any intoxicating liquors, nor that, in this interim, he had used such liquor.   The testimony of attending physicians was that death resulted from a general breaking down of the system caused by the use of too much alcoholic stimulants, and this, as we understand it, was what was alleged in the petition," and after quoting the language of the instruction said in respect to it that "In a proper case the correctness of this instruction would probably be unquestioned.   It, however, applied to a case wherein there may have been produced by the contributory sales of different liquor dealers a state of intoxication from, or by reason of which, directly, the damage complained of resulted.   The evidence in the case at bar shows that, as early as 1881, John McLaughlin had suffered from delirium tremens; that with the exception of a period of about three years soon thereafter he had habitually, up to the time of his death, indulged in frequent debauches, and that, in consequence, his general health became impaired.   We cannot avoid the conclusion that, as applied to the facts of this case, both as pleaded and proved, the above instruction was probably prejudicial to the plaintiffs in error."   After again carefully and thoroughly considering the rule stated for the guidance of the jury in the instruction in question, we are forced to the conclusion that the remarks of the writer of the former decision in this case in regard thereto were entirely pertinent and the conclusion reached a true one.   The questions submitted to the jury by the instruction as given were in reference to a single intoxication of a person and damages arising therefrom, while the ones to be submitted were of an habitual drunkenness of a person, long continued, and the death of a person after an interval during which no intoxicants were used, whether the death was the result of the use of intoxicating liquors, and if so, whether such, as were proved to have been furnished by any of the defendants, contributed to the production of the result, the death.   It is settled that the damages or

loss of means of support of a wife and minor children
caused by the death of the husband and father occasioned
by the use of intoxicating liquors may be recovered in an
action against the liquor sellers who sold or furnished
intoxicating liquors to the party whose death resulted
from the use thereof and the intoxication produced
thereby; but in each case, and as to each party against
whom a recovery is had, the necessary elements of a com-
plete cause of action must be present, must appear, and
as to what are the necessary facts to be proved in order
to recover the jury should be informed. If William H.
Dolan sold or furnished intoxicating liquors to John Mc-
Laughlin, the use of which contributed in producing his
death and the consequent damage to the suing parties,
then he and his bondsmen were liable, and it was proper
to so state in apt and clear language to the jury; but the
instruction given did not so state, was inapplicable to the
facts in the case at bar, and well calculated to mislead the
jury, and should not have been given. In a case in which
the facts and circumstances are as in the case at bar the
connection between the sale and furnishing the intoxicat-
ing liquor, its use, and the damages, must appear, to
warrant a recovery.

The second section of the syllabus of the former opinion
is assailed for being in conflict with the rule of law an-
nounced on the same subject in the decision of the case of
*Curran v. Percival*, 21 Neb., 434. What was decided in
that opinion, as stated in the head-notes thereof, was
as follows: "The sale of intoxicating liquor in a saloon
may be proved by circumstantial evidence, and where
the circumstances establish such sale, the jury will be
justified in disregarding the positive assertion of the
bartender that the liquor sold by him was not intoxi-
cating. An instruction that 'If you shall find from the
evidence that the deceased went into the saloon of the
defendant, and that the business of the defendant was to
sell intoxicating drinks, and that deceased was sober
when he went into the saloon and that he came out of the

saloon intoxicated, these facts raise the presumption that such person obtained intoxicating liquor in such saloon, but such presumption may be overcome by proofs and circumstances; and if you shall find from the evidence that deceased did not procure liquor from the defendant that caused him to be intoxicated, or that contributed thereto, you should find for the defendant,' held not erroneous." It needs no comment, nor more than a mere reading, to convince that the doctrine stated in what we have just quoted and the instruction therein set forth and approved are not identical with what was told the jury by the instruction given in the case at bar, and which we have now under consideration, nor that Commissioner RYAN, in his disapproval of the one given as stated in the second paragraph of the syllabus of the former opinion in this case, did not conflict with or overrule what was really decided in *Curran v. Percival.* In the body of the opinion in that case the writer thereof quoted from the opinion in the case of *McDougall v. Giacomini,* 13 Neb., 435, as follows: "Suppose it is shown that a place is a licensed saloon, and that persons go in there sober and come out under the influence of liquor. These facts raise a presumption that such persons obtained intoxicating liquor in the saloon. (*Commonwealth v. Van Stone,* 97 Mass., 548; *Commonwealth v. Kennedy,* 97 Mass., 224.) The business of a saloon-keeper is to sell intoxicating drinks by the glass. If, therefore, the proof shows that he has sold or furnished liquor at his place of business, the presumption would seem to be that such liquor was such as his business required him to keep and furnish to his customers—intoxicating liquors. The fact of intoxicating liquor being furnished by a saloon-keeper may be proved like any other fact." The portion of the foregoing, "If, therefore, the proof shows that he has sold or furnished liquor at his place of business, the presumption would seem to be that such liquor was such as his business required him to keep and furnish to his customers—intoxicating liquors," was *obiter* in each of the cases in which it was

used and to which we have referred. It is without question that the sale of liquors and their intoxicating character may be proved like any other fact and by circumstantial evidence, or inferred from other proved facts and circumstances, and it is doubtless true that if it be proved that a retail dealer in intoxicating liquors has sold or furnished liquors at his place of business to a person to drink, then facts are established which prove, or tend to prove, or from which it might be inferred in the absence of further proof or of anything to the contrary, that the liquor sold or furnished was intoxicating. This, we take it, was what was meant by what was said in the opinions in the 13th and 21st Nebraska Reports, to which we have hereinbefore alluded; but that the foregoing is true does not warrant the giving of an instruction such as was given in the case at bar, where the evidence on the point as to which the instruction purports to be a charge to the jury is of the character it is in this case. In regard to the condition of the evidence on the particular branch of the case under consideration we will quote from the former opinion: "On the trial the proofs were that the greater part of the intoxicating liquors consumed by McLaughlin were sold to him by J. J. Patterson & Co. There were, however, a few instances as to which the testimony was that intoxicating liquors were sold to him in the saloon of William H. Dolan. This was denied by Dolan and his employes when examined as witnesses. Following this was uncontradicted testimony that, in many instances, McLaughlin had been refused whiskey, notwithstanding the fact that he urgently sought to buy and pay for it. Elias N. Whitmarsh, a witness for the plaintiff in the district court, testified that after October 20, 1890, and before 1891 [the date was not more definitely fixed], he saw John McLaughlin at the bar of William H. Dolan drink something, but whether it was water or beer he could not say. This witness said that the glass out of which this drink was taken looked like a seltzer glass, and that the sale

was by Dolan himself. James H. Clapp, one of Dolan's witnesses, testified that, in December, 1890, or January thereafter, he with others was in Dolan's saloon, and that McLaughlin came up with the rest and took something of a light color in a glass, and that when witness asked him what was the matter McLaughlin answered: 'Billy [Dolan], here, is a good boy, but he won't let me have anything but seltzer.' " And to this might have been added more of the same nature or to the same effect. Such being the state of the issues in respect to the kind of liquor obtained at Dolan's saloon, the instruction given was improper and well calculated to mislead the jury; nor does the conclusion in this or the former opinion in any degree conflict with the doctrine announced in the opinion in *Curran v. Percival*, or the rule which resulted from the approval of the instruction stated in the syllabus to that opinion. The judgment of the district court is reversed and the case remanded for further proceedings.

REVERSED AND REMANDED.