[Crim. No. 641. Third Appellate District.—November 29, 1922.]

## THE PEOPLE, Respondent, v. FRANK AMORT, Appellant.

[1] INTOXICATING LIQUOR—SALE IN NO-LICENSE TERRITORY—PROSECUTION—IMPEACHMENT OF STATE'S WITNESS.—In this prosecution for the sale of intoxicating liquor in no-license territory, contrary to the provisions of the so-called Wyllie Local Option Law, the witness upon whom the prosecution relied to prove the fifth count of the indictment having testified concerning the arrangement made for the purchase of liquor from defendant, and then having testified and repeatedly declared that he did not know whether the bottles of liquor which had been taken by the officers from his premises and which were used at the trial as evidence against the defendant were the liquors sold to him by defendant or those sold to him by another person, it was prejudicial error to permit the district attorney to recall such witness and interrogate him concerning an alleged conversation with the officers in which he admitted that the liquor in question was purchased from defendant.

[2] ID.—IMPEACHMENT OF OWN WITNESS—FOUNDATION NECESSARY.—Before a party will be permitted to impeach a witness produced by him in support of his side of the controversy, it must be made to appear that the witness' testimony is unexpectedly different from that which the party producing him believed he would give, that the party producing such witness is surprised by the testimony given, and that the same is prejudicial to the rights of such party.

[3] ID.—OTHER OFFENSES—INCOMPETENT TESTIMONY—ADMISSIONS OF DEFENDANT.—In a prosecution for the sale of intoxicating liquor in no-license territory, testimony of the commission by the defendant of specific offenses other than those charged in the indictment is wholly incompetent; but it is not error to permit the sheriff to testify that the defendant, at a specified place and time, and after the alleged commission of the offense charged in the indictment, admitted that he (defendant) had been engaged in

"bootlegging," as such declaration did not necessarily involve an admission that he had sold liquor to any particular persons other than those named in the indictment.

[4] ID.—TIME OF COMMISSION OF OFFENSE—SUFFICIENCY OF EVIDENCE. In a prosecution for the sale of intoxicating liquor in no-license territory, proof of the commission of the offense on the exact date charged in the indictment is not necessary so long as the occasion on which the offense was committed may otherwise be identified and that the occasion on which or the time at which the offense was committed be within the period prescribed by the statute of limitations.

APPEAL from a judgment of the Superior Court of Glenn County. H. C. Bell, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

W. T. Belieu for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was convicted in the superior court of Glenn County under an indictment charging him with selling intoxicating liquor in no-license territory, in said county of Glenn, contrary to the provisions of the so-called Wyllie Local Option Law. (Stats. 1911, p. 599.) The indictment charges the defendant, in five different counts, with selling intoxicating liquor to three different persons.

In the first count it is charged that the defendant, on November 11, 1921, sold intoxicating liquor to one Frank Mursa. In the second, third and fourth counts it is alleged that the defendant on the first, tenth and fourteenth days of November, respectively, sold intoxicating liquor to one Ladine and in the fifth count it is charged that he sold such liquor to one Frank Howard on the fifteenth day of November, 1921. In each of the counts it is alleged that the liquor so charged to have been sold by said defendant was "spirituous, intoxicating liquor containing more than one per cent in volume of alcohol." He was convicted under the first, second, third and fifth counts of the indictment. A motion for a new trial by him was denied and thereupon

he was fined the sum of $600, being $150 on each of the four counts, with the alternative of imprisonment for one day for every $3 of said fine.

The defendant prosecutes this appeal from the judgment of conviction and the order denying him a new trial.

The objections to the result reached below are, generally stating them, that the evidence is insufficient to support the verdict as to any of the counts upon which the defendant was convicted, and that the court committed prejudicial error in allowing, over the objections of defendant, certain alleged incompetent testimony. It is further objected that the district attorney, in his address to the jury in behalf of the people, used language not justified by the record and which, therefore, involved highly prejudicial misconduct. These points will be considered in the order in which they are thus stated.

The alleged sales of intoxicating liquor by the defendant took place on the ranch of the defendant's father, near the town of Orland, in Glenn County. The first count of the indictment, in which it is charged that the defendant sold intoxicating liquor to the said Maggart or Mursa, will first be considered.

It appears that three employees of the so-called State Law Enforcement League, Dale W. Maggart, also known as Frank Mursa, J. E. Jerome and G. L. Budd, were operating in Glenn County and that they received information on the eleventh day of November, 1921, that the defendant was engaged in the illicit liquor traffic at the ranch above referred to; that on the night of said day, at about the hour of half past nine o'clock, they went in an automobile to the defendant's home, and while Jerome and Budd remained in the automobile, Maggart went into the house of the defendant, through the rear entrance thereof, and said to him that one Clifton, who was formerly a barkeeper in the town of Orland and who, at the time of this alleged sale, resided in said town and was a personal acquaintance of the defendant, had told him (Mursa, as we shall hereafter refer to Maggart) that he could procure intoxicating liquor from the defendant; and after some conversation the defendant sold to Mursa a bottle of liquor for which the latter paid the defendant three dollars. Mursa then left the defendant's home, taking the bottle of liquor with him. Budd, Jerome

and Mursa each testified that he tasted the liquor and pronounced it intoxicating. Professor Talbot, professor of science and mechanics in the Willows High School, testified that he had studied and made experiments in chemistry and in pursuing the investigations incident to that line of learning had had occasion to make analyses of various kinds of liquors for the purpose of determining their alcoholic content; that, in his capacity as a chemist, he was called upon to make an analysis of the particular liquor in question and that upon such analysis he found that the alcoholic content of said liquor was thirty-one per cent by volume.

Section 21 of the Wyllie Local Option Law provides that the term "alcoholic liquors" as used in said act "shall include spirituous, vinous and malt liquors, and any other liquor or mixture of liquors which contains one per cent by volume, or more, of alcohol, and which is not so mixed with other drugs as to prevent its use as a beverage."

It is clear that as to the first count of the indictment the above testimony sufficiently supports the verdict. It is true that the defendant introduced testimony tending to show that he was not at home on the night of the 11th of November, 1921, when the enforcement officers claimed to have called there and Mursa claimed to have purchased the liquor in question from the defendant. But it was for the jury to determine the conflict thus created in the testimony and the verdict implies that the testimony presented by the defendant, in support of his alibi, was rejected and that presented by the people in support of the allegations of the first count of the indictment was accepted by the jury. The verdict is, therefore, conclusive upon this court.

The second and third counts of the indictment charge that the defendant on the first day of November, 1921, and the tenth day of November, 1921, sold intoxicating liquors to one Roy R. Ladine. The latter, testifying on behalf of the people, stated that on two different occasions in the month of November, 1921, he purchased intoxicating liquor from the defendant and paid him for the liquor obtained the sum of $1.50 on each occasion. Ladine testified that he drank the liquor so obtained and that it was intoxicating. On cross-examination he was made to admit that he was in more or less of a state of inebriety when he purchased the liquors from the defendant and from this circumstance the

jury were entitled to draw the inference that he was fully
capable of determining, upon sampling the liquors ob-
tained from the defendant on the two occasions referred to
in the second and third counts of the indictment, whether
they were of an intoxicating character. At any rate, we
conclude that the testimony by Ladine was sufficient to show
that the liquors he procured from the defendant were in-
toxicating and that, the jury having accepted said testi-
mony as verity, the verdict, as to the second and third
counts, is amply supported.

[1] As to the fifth count, an examination of the record
has convinced us that the defendant's conviction thereunder
cannot be sustained. As seen, it is charged in said count
that the defendant, on the fifteenth day of November, 1921,
sold intoxicating liquor to one Frank Howard. The tes-
timony of said Howard constituted all the proof offered to
support this count of the indictment. Howard testified that
some time in November, 1921, he made an arrangement with
the defendant, whereby the latter was to leave a jug of
brandy for him (Howard) in the back-yard of the premises
occupied by the witness. He further testified that, near the
same time, he purchased a large quantity of liquor from a
man by the name of Cupps and also had requested him to
leave the liquor at some particular spot in the rear of his
premises. He stated that the defendant left the liquor he
had arranged to purchase from him at the place designated
on the witness' premises and that Cupps did likewise; that
he transferred said liquor from the jugs in which they were
delivered to him to bottles and that he placed the bottles
on a shelf in a room in the building occupied by him. He
testified and repeatedly declared that he did not know
whether the two bottles of liquor which had been taken by
the officers from his premises and which were used at the
trial as evidence against the defendant were the liquors sold
to him by Cupps or those sold to him by the defendant.
Thus stood the case so far as the evidence is concerned
against the defendant on the fifth count, until Howard was
thereafter recalled by the prosecution and asked by the dis-
trict attorney the following question: "I show you two
bottles here again, and ask you if that night, the 21st of
November, at your house, Charley Harelson (City Marshal
of Orland), and Sheriff Newt Power being present, did you

say to them, pointing to those two bottles, that that was the Amort liquor?'' The question was objected to by defendant's counsel on the ground that the evidence thus sought to be elicited was incompetent in that it was hearsay. After considerable argument the court asked the district attorney if the purpose of the question was to impeach Howard, to which the district attorney replied in the affirmative; and after further argument between counsel the court overruled the objection upon the theory that, although the witness was produced by the people, his impeachment was proper as being within the contemplation of sections 2049 and 2052 of the Code of Civil Procedure. Upon the record as it is presented here upon the question in hand, the ruling was clearly erroneous. Section 2049 of the Code of Civil Procedure provides: ''The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in section two thousand and fifty-two.'' Section 2052 reads: ''A witness may also be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done the statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them.''

[2] It is well settled that before a party will be permitted to impeach a witness produced by him in support of his side of the controversy, it must be made to appear that the witness' testimony is unexpectedly different from that which the party producing him believed he would give and that the same is prejudicial to the rights of such party. As was said in the recent case of *People* v. *Spencer*, 58 Cal. App. 197 [208 Pac. 380, 392]: ''The purpose of the above section (sec. 2049, Code Civ. Proc.) is to permit a party who has, in good faith, placed a witness upon the stand, with a distinct understanding that he will give testimony in support of his side of the issue, but, instead of so doing, and to the surprise of the party presenting him as such witness, has given damaging testimony against said party, to show

that, prior to giving his testimony, he made a statement which, if testified to, would be favorable to the party so making him his witness. . . . (*Zipperlen* v. *Southern Pac. Co.*, 7 Cal. App. 206, 214–217 [93 Pac. 1049].) But, to entitle the party to contradict such a witness, it must appear that he was taken by surprise by the testimony of the witness and that said testimony, as stated, was prejudicial to his case. A party has no right to invoke the aid of that section merely for the purpose of getting into the record testimony which otherwise could not be brought thereinto because of its incompetency. 'The mere failure of a witness to give favorable testimony for the party producing him does not entitle such party to prove that he has made contrary statements elsewhere.' (*People* v. *Creeks*, 141 Cal. 529 [75 Pac. 101]; *People* v. *Cook*, 148 Cal. 334, 345 [83 Pac. 43]; *Zipperlen* v. *Southern Pacific Co.*, *supra.*) "

There is no showing in this case that the district attorney was surprised by the testimony of Howard to the effect that he was not able to say whether the liquor offered and received in evidence in the case against the defendant was from the jug of liquor purchased from the defendant or the jug of liquor bought from said Cupps. Indeed, if there may be said to be any showing at all in the case upon this proposition, it was the result of a colloquy between the district attorney and the attorney for the defendant during the course of the argument between them upon the question of the admissibility of the impeaching testimony, the attorney for the defendant saying that the same testimony was received at the former trial of this case and was stricken out, to which the district attorney replied that "it was not stricken out," but this would seem to justify the inference that the district attorney was very well aware of the fact, when he called Howard to the stand as a witness for the people at the trial of which this appeal is the outgrowth, that he would not testify that the liquor used at the trial as evidence to support the fifth count of the indictment was the liquor purchased from the defendant. Obviously, the importance of testimony showing that the liquor in question was purchased from the defendant lay in the fact that there was proof of the alcoholic content or the intoxicating nature of said liquor. If said liquor was furnished to Howard by said Cupps, then, of course, no case would be

made against the defendant upon that count; or, to state the case as it here appears, there being no competent testimony showing that the defendant sold the liquor in question to Howard, the verdict, in so far as the fifth count is concerned, is without support, notwithstanding the liquor was shown to be of an intoxicating character.

[3] The court, against objection by counsel for the defendant, permitted the sheriff of Glenn County and one Roy Markham to testify that the defendant, at his home, on the twenty-first day of November, 1921, and after the alleged commission of the offenses charged in the indictment, practically admitted to said parties and to the district attorney that he had been engaged in bootlegging, as the illicit traffic in alcoholic liquors is now colloquially called. The objection to this testimony was placed upon the ground that its effect was to introduce into the case, to the prejudice of the rights of the accused, evidence of "other offenses" than those for which the defendant was upon trial. The sheriff testified that upon the occasion mentioned the district attorney asked the defendant "why he was selling liquor, or why he did this and he said that he had a mortgage on the place he had to pay off, but that he had not sold much as yet." Markham's testimony was in substantial corroboration of the testimony of the sheriff. He said: "We were going out to the barn—Mr. Powers and Mr. McGowan and myself and the question was asked by Mr. McGowan why he had been peddling this stuff—bootlegging—to which the defendant replied, 'Well I have got a big mortgage on the place and I am trying to get out of debt, although I haven't sold a great deal.' "

Undoubtedly, testimony of the commission by the defendant of other specific offenses—that is, testimony that he had sold on other occasions to other people than the defendant intoxicating liquor—would be wholly immaterial. (*People v. Clark*, 28 Cal. App. 670 [153 Pac. 719].) We are not prepared to say, though, that evidence that a person on trial for selling liquor to a particular individual tending to show that such defendant had been habitually engaged in the unlawful sale of intoxicating liquors would not be competent and proper as a circumstance tending to establish the particular charge in the indictment or information. It certainly would tend to prove that the defendant was under

no misapprehension as to the character of the article he sold to the party named in the accusatory pleading as the one to whom he had sold intoxicating liquor. But we are not required to decide this proposition herein. The declaration of the defendant to which the sheriff and Markham testified in this case did not necessarily involve an admission that he had sold liquor to any particular persons other than those named in the indictment. In other words, what he said in reply to the question propounded to him by the district attorney may be assumed to have referred, at least in part, to the transactions upon which the indictment was founded, and, therefore, even if it might be construed to extend to other transactions, it was, nevertheless, admissible in its bearing upon the several charges set forth in the accusatory pleading in this case. It would seem to be clear that, when the district attorney asked the questions, he could have had in mind no other transactions involving the sale of liquor by the defendant than those mentioned in the indictment, since it does not appear that he knew of any other such transaction having been carried out by the defendant.

[4] It is contended that the evidence fails to show that the defendant sold liquor to Ladine on the days designated in the indictment, and that, therefore, the charges contained in the two counts as to the sales to Ladine are not evidentially supported. It is true that while the precise time at which each of the sales charged in the indictment as having been made by the defendant to Ladine is not shown by the evidence, it is so shown that those sales took place on two different occasions in the month of November, 1921. Under the general rule, proof of the commission of the offense on the exact date charged in the indictment is not necessary so long as the occasion on which the offense was committed may otherwise be identified and that the occasion on which or the time at which the offense was committed be within the period prescribed by the statute of limitations. (*State* v. *Rogers*, 31 Mont. 4 [77 Pac. 294]; *People* v. *Lafuente*, 6 Cal. 202.) No other sales were shown to have been made to Ladine during said month but those mentioned in the first and second counts, and this is sufficient to identify the particular crimes alleged in counts two and three of the indictment.

It is contended that the district attorney was guilty of misconduct during the course of his argument to the jury. Consideration of what was said by that official in his argument with respect to count five charging the defendant with selling liquor to Howard and which is assigned as misconduct on the part of the district attorney may be waived, since the judgment and the order as to said count must be reversed. We have examined the other assignments under this head and have thus become convinced that there is no merit in the claim upon which they are founded. Some of the alleged objectionable remarks by the district attorney were not excepted to at the time they were uttered, while others we hold to have been within the bounds of legitimate argument upon the issues as presented by the indictment and developed by the evidence.

Lastly, we may briefly notice the suggestion by the appellant that his conviction is opposed to public policy for the asserted reason that the sales of intoxicating liquor by him, as alleged in the indictment, were the result of his entrapment into the commission of the alleged criminal acts by the officers, with no design on his part originally to commit said acts. In other words, the suggestion is that the officers themselves originated the design to have the crimes charged in the indictment committed and by some artful means induced the defendant, who until then had no intention of doing the wrongful acts, to carry out said design. There is no ground afforded by the record for the support of this suggestion. As shown, the officers had obtained information that the defendant was engaged in selling intoxicating liquor and upon acquiring such information proceeded to his home to investigate the matter, with the result as above explained. The officers in so proceeding did nothing more than their official duties required them to do. What is said regarding precisely the same proposition in *People* v. *Tomasovich,* 56 Cal. App. 520 [206 Pac. 119], is pertinent to the suggestion here made and is, indeed, a full answer thereto.

As to counts numbers one, two and three the judgment and the order are affirmed, and as to count number five the judgment and the order are reversed.

Burnett, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 29, 1923, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 25, 1923.

All the Justices concurred.