[Crim. No. 743. Third Appellate District.—May 22, 1924.]

## THE PEOPLE, Respondent, v. J. R. PETROVICH, Appellant.

[1] CRIMINAL LAW—SALE OF INTOXICATING LIQUOR—SUBSEQUENT POS-
SESSION OF LIQUOR BY DEFENDANT—ADMISSION OF AS CORROBORA-
TIVE EVIDENCE.—In a prosecution for unlawfully selling two bot-
tles of wine contrary to the provisions of the Wright Act, testimony
of the actual sale of said two bottles of wine having first been
introduced, testimony as to the possession by defendant of a
considerable quantity of wine ten days after the date of the
alleged sale was properly admissible for the purpose of corroborat-
ing the evidence as to the sale; and the mere fact that the wine
was illegally in the possession of the defendant and established
his guilt of having intoxicating liquors in his possession unlaw-
fully, constituted no reason why the testimony as to possession
should not be admitted as corroborative evidence of the testimony
as to the illegal sale charged in the information.

[2] ID. — INSTRUCTION—PROPER REJECTION OF. — In such prosecution,
the trial court properly refused to give a proposed instruction
dealing with the presumption of innocence and the burden and
character of proof necessary to a conviction, where such proposed
instruction was argumentative in form and all the correct por-
tions thereof were included in other instructions given by the
court.

[3] ID.—WRIGHT ACT—JAIL SENTENCE—JURISDICTION.—The court has
jurisdiction under the Wright Act to impose a jail sentence for
a first offense in selling liquor.

[4] ID.—EVIDENCE—REBUTTAL.—In such prosecution, the defendant
having testified on direct examination that he had a great many
visitors, the mere fact of showing visitors additionally upon re-
buttal could in no sense be prejudicial.

[5] ID.—OBSERVATIONS OF POLICE OFFICER—IMPROPER ADMISSION OF
TESTIMONY—ABSENCE OF MISCARRIAGE OF JUSTICE.—In such prose-
cution, the testimony of a police officer to the effect that before
the illegal sale in question he stood across the street from defend-
ant's house for the purpose of trying to find out whom defendant
would sell wine to, and that he saw several people go into the
house with nothing in their hands and that when they came out
one of them had a package wrapped in a newspaper in his hands,

1. See 8 Cal. Jur. 180.
3. See 14 Cal. Jur. 752.
4. See 8 Cal. Jur. 236.
5. See 8 Cal. Jur. 599, 615; 2 Cal. Jur. 1020; 2 R. C. L. 247.

should have been excluded, and although the prosecution desired the inference to be drawn from the fact that one of said persons emerged from the house with a package wrapped in a newspaper, that the defendant had then and there sold a bottle of wine, which was, however, simply a matter of conjecture, in view of section 4½ of article IV of the constitution, no sufficient prejudice resulted to warrant a reversal.

[6] ID.—ARGUMENT OF DISTRICT ATTORNEY—IMPROPER REFERENCE TO FOREIGN LINEAGE OF DEFENDANT—ABSENCE OF PREJUDICE.—In such prosecution, although the reference made by counsel for the prosecution in his address to the jury concerning the foreign lineage of the defendant, and the indisposition of such persons to conform to American customs and laws, were improper and should have been excluded, nevertheless it did not result in a miscarriage of justice.

---

(1.) 16 C. J., p. 606, sec. 1174; 33 C. J., p. 752, sec. 492.　(2) 16 C. J., p. 1036, sec. 2476, p. 1063, sec. 2506; 33 C. J., p. 791, sec. 547. (3) 33 C. J., p. 798, sec. 554.　(4) 17 C. J., p. 306, sec. 3649.　(5) 17 C. J., p. 368, sec. 3751.　(6) 17 C. J., p. 298, sec. 3638.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Charles O. Busick, Judge.　Affirmed.

The facts are stated in the opinion of the court.

Clifford A. Russell for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was tried and convicted on an information charging him with having on or about the third day of July, 1923, in the county of Sacramento, state of California, unlawfully sold two bottles of wine contrary to the provisions of what is commonly known as the Wright Act of the state of California (Stats. 1921, p. 79).　The defendant's motion for a new trial being denied, he prosecutes this appeal therefrom and also from the judgment of conviction in said cause.

As grounds for reversal the defendant alleges improper admission of testimony, erroneous instructions and illegality of sentence.

---

6.　See　8 Cal. Jur. 621; 2 R. C. L. 242.

The testimony introduced by the People is to the effect that the two bottles of wine were sold by the defendant at the time stated, at his place of residence, to wit, 500 Q Street in the city of Sacramento. It appears that the witness Horstmeyer, a police officer of the city of Sacramento, who was acquainted with the premises and had visited the same prior to the third day of July, 1923, went to the defendant's residence at about the hour of 9 P. M. on the day in question and personally solicited of the defendant the purchase of two bottles of wine. The witness and the defendant went into the dining-room of the defendant's residence and some conversation was had as to the kind of wine desired by the purchaser, whether he wanted sweet or dry wine. The witness replied that he wanted a bottle of each. He also testified that the defendant went into another part of the building and returned with two quart bottles, delivered them to the witness and the witness paid the defendant the sum of two dollars for the two bottles of wine. These bottles of wine were subsequently analyzed and found to contain a much greater quantity of alcohol than that allowed in the Volstead law. The two bottles of wine in question were properly identified and admitted in evidence. After this evidence had been introduced the prosecution placed upon the stand a witness by the name of E. J. Cox, also a member of the police department of the city of Sacramento. This witness testified that he went to the premises of the defendant on or about the thirteenth day of July with a warrant of arrest for the defendant and also with a search-warrant authorizing him to make a search of the premises known as 500 Q Street and then occupied by the defendant, that upon making a search of the premises he found and seized forty-five bottles of wine, five demijohns of wine and three barrels of wine. All of the wine seized, excepting one or two bottles, was found in the basement of the premises occupied by the defendant.

The defendant denied the sale of the wine and in explanation, or as an attempt to refute the testimony of the witness Cox as to the possession of the large quantity of wine, introduced in evidence a permit to make 200 gallons of grape juice. The defendant further in his testimony admitted the possession of the wine, part of which he described as claret and part as white wine, and also that one of the barrels of wine had fermented and become vinegar. The defendant also, upon cross-examination, without any objection being in-

terposed, testified that he had paid a fine of two hundred dollars on account of the illegal possession of the wine in question.

[1] It is strongly urged by the appellant that the testimony as to the possession of a considerable quanity of wine herein referred to ten days after the date of the alleged sale, was not only erroneous but was seriously prejudicial. In behalf of this contention we are cited to a number of cases, notably, *People* v. *Smith,* 64 Cal. App. 344 [221 Pac. 405], and *People* v. *Amort,* 60 Cal. App. 29 [212 Pac. 50], where it is held that upon a prosecution for an unlawful sale of liquor, evidence of other sales is inadmissible. So far as this case is concerned, we do not need to either limit or expand the principle there announced or question the correctness thereof for the simple reason that those cases are inapplicable to the issue here presented. This case involves the question of possession and is more nearly allied with the principle of law enunciated in many cases showing preparation and readiness to commit crime. While our attention has not been called to any cases in this state having to do with this question it is by no means new. Other courts in considerable numbers have admitted such testimony.

In 33 Cor. Jur. 752, a general rule is stated as follows: ''On a trial for keeping liquor for unlawful sale, maintaining a liquor nuisance, carrying on the business of liquor dealer, or other like offense in violation of the liquor laws, evidence as to defendant's ownership or possession of intoxicating liquors, or of appliances or apparatus used in the manufacturing or selling of such liquors, at or within a reasonable time before or after the alleged offense, is ordinarily admissible, unless it refers to a time after the beginning of the prosecution, although it has been held that evidence of possession after the alleged offense is not admissible to prove possession at that time. Unless such evidence is too remote in time to be admissible, the disparity in time between it and the time of the alleged offense affects only its weight or probative value. In a prosecution for an illegal sale or disposition of liquor evidence of ownership or possession is admissible only in corroboration of other evidence as to the fact of a sale, and hence is incompetent and irrelevant, for the purpose of showing whether or not an unlawful sale or disposition was made, unless it is introduced in connection with other evidence of such sale or disposition.'' Only one

case is referred to in the notes to the text just quoted holding that such testimony is inadmissible. It will be noted that in the case at bar, testimony as to the actual sale was first introduced and then, under the rule stated, testimony as to possession may be admitted for the purpose of corroborating the evidence as to the sale.

In the case of *State* v. *Legendre,* 89 Vt. 526 [96 Atl. 9], the supreme court of the state of Vermont held as follows: "In a prosecution for the unlawful sale of intoxicating liquors, the evidence of the search of defendant's shop made by the officers thirteen days after the alleged unlawful sale, and of the whisky and empty bottles then found there, was admissible, as tending to show that intoxicating liquor had been kept there for illegal traffic, and as connecting defendant in ownership with the whisky sold at the time alleged." Citing in support of these statements *Commonwealth* v. *Van Stone,* 97 Mass. 548.

In *Reub* v. *State,* 93 Tex. Cr. 345 [247 S. W. 867], testimony of prosecuting officers that they went to the premises of the defendant and found intoxicating liquor was admissible. The court said: "We have frequently held that testimony of the manufacture by the accused of intoxicating liquor is admissible and has probative force when the charge against him is the selling of intoxicants." The defendant in that case was charged and convicted of the offense of unlawful selling of intoxicating liquor.

In *Holmes* v. *State,* 12 Ga. App. 359 [77 S. E. 187], the court stated two propositions of law relative to the discovery of liquor in the possession of the defendant after the date of the alleged sale. The first is: "That the mere possession of liquor in any quantity or at any place was not a circumstance from which the jury might infer that the possessor had already been guilty of selling it." Secondly: "That it was competent to introduce in evidence the bottles of whisky found in the house of the accused where the alleged sale had taken place. This evidence of itself alone was worth little, but taken in connection with the testimony as to the sale, it might have some corroborative value."

In the case of *Smith* v. *State,* 12 Ga. App. 482 [77 S. E. 651], the supreme court of Georgia held that: "On the trial of one charged with the sale of intoxicating liquor, evidence that on the premises where the sale was alleged to have been made were found numerous empty bottles which had con-

tained whisky, and other bottles and jugs which did contain whisky, was admissible in corroboration of the testimony in behalf of the state that a sale had been made.''

Again, in the case of *Craig* v. *State,* 9 Ga. App. 233 [70 S. E. 974], the court held that: ''On the trial of one charged with illegally selling whisky, it is not error to admit evidence that the house where the accused lived was searched by an officer subsequently to the day on which the alleged sale was made, and that bottles of whisky and empty bottles which had contained whisky were found therein. . . . The fact that the direct evidence was of a sale some months previous to the search of the house where the accused lived would only affect the weight or probative value of the circumstances that whisky and empty whisky bottles were found in the house. . . .'' A number of cases are there cited in support of such ruling.

In *Wooten* v. *State,* 17 Ga. App. 333 [86 S. E. 740], the same court again held that evidence of a large quantity of whisky discovered in a trunk belonging to the defendant was admissible upon a trial for the illegal sale of whisky.

In *State* v. *Boynton,* 155 N. C. 456 [71 S. E. 341], the supreme court of North Carolina held that: ''In a prosecution for the illicit sale of whisky, evidence that prior to the sale charged defendant had whisky in his possession at different places in the city, and that at the places under his control whisky was being sold and drunk, and that persons who had been in his places of business had seen whisky and beer therein, is admissible to show that defendant had whisky on hand in prohibited territory and was prepared to make the illegal sale charged by the indictment.'' Practically to the same effect is the case of *De Graff* v. *State,* 2 Okl. Cr. 519 [103 Pac. 538], where testimony was admitted showing that whisky and beer glasses, corks and bottles that looked like whisky and beer bottles were seen in the place and that in the back yard and on the same lot prohibited liquors were found.

In the case of *Myers* v. *State,* 52 Tex. Cr. 558 [108 S. W. 392], the supreme court of Texas held that: ''Evidence of contemporaneous possession of whisky or other intoxicants by accused is admissible, where he is being prosecuted for a sale of intoxicating liquors. . . .'' But also held that testimony of possession of such liquors one to six weeks after

the alleged sale was not so contemporaneous as to render such evidence admissible.

The same court, in *Black* v. *State*, 68 Tex. Cr. 151 [151 S. W. 1053], held in a prosecution for the unlawful sale of intoxicating liquor evidence was admissible to show that the defendants had access to a quantity of whisky at the time of the alleged sale.

Also, in the case of *McCuen* v. *State*, 75 Tex. Cr. 108 [170 S. W. 738], it was held by the same court that whisky found on the person of the defendant on the second day after the alleged sale was admissible as a circumstance to show that the defendant had made the sale as charged.

In the case of *Patton* v. *State*, 66 Tex. Cr. 259 [145 S. W. 1189], the supreme court of Texas held that evidence was admissible on a trial for selling whisky to show that a large quantity of whisky had been received by the defendant.

A number of courts have held that evidence of the receipt of liquor prior to the date of the alleged sale to be admissible following the rule announced in the Texas case just cited.

In the instant case the defendant admitted the possession of wine. The mere fact that the wine was illegally in the possession of the defendant and established his guilt of having intoxicating liquors in his possession unlawfully, constituted no reason why the testimony should not be admitted as corroborative evidence of the testimony as to the illegal sale charged in the information.

The defendant also urges that the court committed prejudicial error in refusing to give the following instructions:

"You are instructed that all presumptions of law are in favor of the innocence of persons accused of the commission of crime, and every person so accused is presumed to be innocent until the contrary is shown, and until his guilt is established by the evidence in the trial of the case, to your entire satisfaction and beyond all reasonable doubt.

"The law is tender and careful of the lives and liberties of our people, and, in order to justify you in rendering a verdict, the effect of which may deprive a citizen of his life or liberty, every material fact necessary to establish the guilt of the defendant of the offense charged against him, whereby he may lose his life or liberty, must be established by those who are entrusted with the duty of prosecuting

him, to a moral certainty and beyond all reasonable doubt. The law does not place upon the shoulders of a defendant in a criminal action the burden of proving that he is innocent of the offense charged, but it does impose upon the prosecution the necessity of proving his guilt so thoroughly and conclusively as to satisfy the minds of the jury that he is guilty to a moral certainty and beyond a reasonable doubt, else he should be acquitted.''

[2] All the correct portions of said proposed instruction were included in other instructions given by the court. As proposed by the defendant, the instruction is argumentative in form and the court very properly refused to give the same. The law is too well settled that neither the people nor the defendant is entitled to an argument from the court in the form of an instruction to require any citation of authorities.

[3] We have heretofore, in the recent case of *People* v. *Lamb, ante,* p. 263, [277 Pac. 969], considered and disposed of the objection that the court has no jurisdiction to impose a jail sentence for a first offense in selling liquor. We there held such objection untenable. Further consideration of that question is, therefore, unnecessary.

During the course of the trial the witness Horstmeyer was allowed to testify as follows: ''I went to the defendant's place on the night of the thirtieth of June. Q. And what did you see that night in reference to people going into the house, Mr. Horstmeyer?'' To this question the defendant objected that it was immaterial and not proper rebuttal. The objection was overruled and the witness answered: ''I stood across the street for the purpose of trying to find out whom he would sell wine to.'' Mr. Russell, counsel for the defendant, made objection to that question as being a voluntary statement and the opinion and conclusion of the witness and asked that it be stricken out. The court denied the motion at this time, stating: ''Proceed to finish your answer, and then I will rule. A. I stood across the street in the darkness of the shadow of a tree there, and I saw a car pull up; it was an Essex car; it pulled up, not directly in front of the house, but a little past the front of his house, and three young fellows got out, and two went in and one on the front stairs, and went right—Mr. Henderson (interposing): And were they carrying anything when they went in, Mr. Horstmeyer, that you noticed? A. Not anything; no.

Mr. Russell: Now, then, just a minute, if the court please. May I refer back to the previous question? Counsel for the People interrupted. I desire to make a motion. The Court: Yes. Mr. Russell: Now, your Honor, I desire to move to strike out the first portion of the witness' answer to the previous question in reference to his conclusion and his observation 'I stood there across the street for the purpose of observing,'—May I have the exact wording, Mr. Reporter, please? Mr. Henderson: I will submit, if your Honor please, that it is not any conclusion; that was just his object in standing there. He stood there, and he knows why he stood there. The Court: The motion to strike out will be denied.. Mr. Russell: I move to strike out the entire answer, and those portions of it in reference to his standing there, as being not responsive to the question. The Court: Motion is denied. Mr. Henderson: All right. Q. You say these young men that got out of the Essex car didn't have anything in their hands when they went in. A. Nothing; their hands were free. Q. Did you see anything in their hands when they came out of the house, Mr. Horstmeyer? A. In one of them,—in one of the young men's hand, he had a package, wrapped up in newspaper.''

[4] On direct examination the defendant testified that he had a great many visitors. One of his answers was: ''Well, I got some roomers, and my family, and always I had visitors; you know, that time, my boy is sick in bed, you know, we have about fifty visitors every day.'' From this it follows that the mere fact of showing visitors additionally upon rebuttal could in no sense be prejudicial. [5] That the testimony we have here set out should have been practically all excluded by the court is beyond question. The reasons for the witness standing there and the reasons which actuated him had nothing to do with the guilt or innocence of the defendant. Of course it is apparent that the prosecution desired the inference to be drawn from the fact that one of the young men emerged from the residence with a package wrapped in a newspaper, that the defendant had then and there sold a bottle of wine, but as that was simply a matter of conjecture, we do not think it sufficiently prejudicial, in view of section 4½ of article IV of the constitution, to warrant a reversal. [6] We think the same is true in relation to the reference made by counsel for the People in his address to the jury concerning the foreign lineage of

the defendant, and the indisposition of such persons to conform to American customs and laws. Such· remarks are improper and should have been excluded by the court, but, though improper, did not, in our opinion, result in a miscarriage of justice, and furnish no grounds for a reversal of the judgment.

We think the order denying the motion for a new trial and the judgment entered herein should be affirmed, and it is so ordered.

Weyand, J., *pro tem.*, and Finch, P. J., concurred.