LANGDON, D. B. A. RIGHT SPOT CAFE, APPELLEE, *v.* BOARD OF LIQUOR CONTROL OF THE STATE OF OHIO ET AL., APPELLANTS.

(No. 5085—Decided September 24, 1954.)

*Mr. Charles T. Kaps,* for appellee.

*Mr. C. William O'Neill,* attorney general, and *Mr. Kiehner Johnson,* for appellants.

HORNBECK, J. This is an appeal on questions of law from a judgment of the Common Pleas Court reversing an order of the Board of Liquor Control which affirmed the action of the Department of Liquor Control suspending the permit of appellee for thirty days.

The charge against the permittee which the director and the board found to have been established was:

"That on July 10, 1953, you and/or your agent or employee did sell and furnish in and on the permit

premises spirituous liquor, to wit, whiskey, by the bottle, for consumption off the premises in violation of the provisions of the Liquor Control Act and the regulations of the Board of Liquor Control.''

The facts disclose beyond question that the bartender in the place of business of the permittee sold a fifth of whiskey to one Bekemeir, and that such sale was in violation of the Liquor Control Act and the regulations of the board. The defense of the permittee was that his agent was entrapped into making the sale. The department and the board held against this contention but upon the review in the Common Pleas Court it was sustained and the order of the board reversed.

Appellants assign three grounds of error which are to be determined upon two contentions which are asserted by appellants:

(1) That the doctrine of entrapment is confined to defenses in criminal charges; and

(2) That entrapment is not established.

If either contention is established the other is not controlling.

If the doctrine has application to these cases, we feel bound by our decision in *State* v. *Gutilla,* 94 Ohio App., 469, 116 N. E. (2d), 208, wherein we held that the defense of entrapment to a criminal charge was not established. The facts in the *Gutilla case* are of sufficient similarity to those in the instant appeal to constitute the pronouncement in the *Gutilla case* a precedent. In the cited case a policewoman applied to the defendant for treatment representing that she was ill when she was not, and by this means secured the evidence upon which the defendant was convicted. We find no sufficient reason to change our view as expressed in the *Gutilla case.*

In the *Gutilla case* we adopted the principle controlling as stated in 12 Ohio Jurisprudence, 80, Section 38:

"Where the doing of a particular act is a crime regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of accused, and the criminal offense is completed, the fact that an opportunity is furnished, or that the accused is aided in the commission of crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense."

This quotation is taken from an annotation in 18 A. L. R., 146.

There are many reported cases on entrapment in liquor violations and the holdings vary widely. It would serve no good purpose to cite and discuss these cases because the judgments in many cannot be reconciled.

Applying the text set forth in the above citation, let us see whether the director and the board were required to say that the intent to sell the liquor in violation of the law and a rule of the board did not originate in the mind of the permittee's bartender. The purchaser of the liquor, operating for an investigator of defendants, and the bartender had been acquainted for a number of years, which we assume was a friendly relation. The purchaser stated to the bartender that he was going fishing, with the implication that he wanted to take the liquor with him, and if he did not get it his trip would have to be postponed. He also said that it would be O. K., that is, that the bartender would not get caught in the improper sale. It appears also that the bartender said he would not like to do it, *viz.,* make the sale.

Certainly, the friendship, the fact that the purchaser wanted to take the liquor with him on a fishing trip, and his statement that he would not report the violation, were not sufficient to justify a known violation of the law by the bartender or to overcome any improper purpose or intent that he must have had when he made the sale. The sale was completed and the purchase

price paid, which netted a substantial profit to permittee.

The role of an informer is not ordinarily looked upon with approval, and was understandably condemned by the judge on the appeal to the Common Pleas Court. However, we must recognize that the Department of Liquor Control is charged with the obligation of regulating the traffic in intoxicating liquors and with keeping within proper bounds the activities of permittees. Certainly the department would have no part or take no satisfaction in inducing permittee to violate the law solely to entrap him and would only resort to such practice as appears here if it had some reason for believing that he was exceeding his rights under his permit.

It appears in the testimony that the police officer and the investigator for the Department of Liquor Control, on the night of the occurrences as disclosed in the record, were of the opinion that there were some spots that were violating the law and it is probable that this information, in part, at least, explains the fact that the purchase was made by an individual other than an officer of the law. *St. Clair* v. *United States* (C. C. A., 8, 1927), 17 F. (2d), 886; *Reyff* v. *United States* (C. C. A., 9, 1924), 2 F. (2d), 39; *People* v. *Amort,* 60 Cal. App., 29, 212 P., 50.

It is obvious that the friendship between the bartender and the purchaser of the liquor, that he had expressed his desire to go fishing, that the trip might have to be postponed if he did not get the whiskey, and the assurance that nobody would learn of the sale, all had some influence on the bartender to prevail upon him to complete the transaction, and that he could safely do so, but the department had the right to find that it was insufficient to overcome his volition or to exonerate him of his purpose to violate the law when he completed the sale.

Certain observations in the opinion in *Board of*

*Commrs. of Excise* v. *Backus,* decided many years ago, 1864, 29 How. Pr. (N. Y.), 33, at page 42, are pertinent here:

"Even if inducements to commit crime could be assumed to exist in this case, the allegation of the defendant would be but the repetition of the plea as ancient as the world, and first interposed in Paradise: 'The serpent beguiled me and I did eat.' That defense was overruled by the great Lawgiver, and whatever estimate we may form, or whatever judgment pass upon the character or conduct of the tempter, this plea has never since availed to shield crime or give indemnity to the culprit, and it is safe to say that under any code of civilized, not to say Christian ethics, it never will."

Defendants did not err in holding that entrapment was not established.

We hold against the appellants upon their contention that entrapment, if established, may not be employed as a defense to a charge preferred against a permittee by the Director of Liquor Control.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*

WISEMAN, P. J., and MILLER, J., concur.