Bienvenido **RODRIGUEZ**, a/b/a El Tesoro Escondido, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. No. 81–0162(PG).

United States District Court, D. Puerto Rico.

Feb. 24, 1982.

Frank Rodriguez-García, Ponce, P. R., for plaintiff.

Raymond L. Acosta, U. S. Atty., Hato Rey, P. R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This is an action brought under Section 14 of the Food Stamp Act, 7 U.S.C. § 2023, to review the administrative action of the Food and Nutrition Service which disqualified plaintiff's firm, El Tesoro Escondido, from participation in the Food Stamps Program for a period of one year. On June 15, 1981, defendant filed a motion for summary judgment, and plaintiff opposed said motion on June 18, 1981. For the reasons set forth below, defendant's motion will be granted.

Plaintiff owns and operates a grocery store named El Tesoro Escondido, in Parcelas Los Indios, Guayanilla, Puerto Rico, authorized to accept food stamps in payment

for the food items he sells (7 U.S.C. 2018). There is no essential dispute about the facts leading to the suspension.[1]

In January 24, 1980, by letter, the Food and Nutrition Service of the Department of Agriculture cautioned plaintiff as to the importance of observing the requirements of the Food Stamps Program and the possibility of disqualification (See Exhibit III). Shortly before the letter, a representative of the Service personally talked to plaintiff about possible violations of the Food Stamps Program and the consequences in view of the unusually high rate of coupon redemptions at his store.

Following a report from the New York Office of the Food and Nutrition Service, on April 2, 1980, an investigation was requested based on a concern over the excessive redemption of coupons at plaintiff's store. Said investigation of El Tesoro Escondido, during the period between April 16, 1980, and May 8, 1980, revealed that on five out of six occasions ineligible non-food items were sold for food stamps coupons. Twenty-five out of sixty-seven items purchased were ineligible, including cleaners, detergents, trash bags, tooth paste, toilet tissue, disinfectants, and three bottles of rum.[2] Plaintiff was then notified of the charges against him in a letter dated June 2, 1980, was advised in detail of the purchases, and was given an opportunity to respond to said letter.

Plaintiff then went to the Field Office, in Ponce, and was interviewed by Ms. Virgen Capestany. After reading the charges to plaintiff at said interview, he signed, on June 12, 1980, a statement wherein he accepted all the charges, except selling three bottles of rum. The initial notice of suspension was given to plaintiff in July 31, 1980. Again plaintiff was given a further opportunity to argue against the findings and proposed sanctions.

Subsequently, plaintiff administratively appealed the disqualification on August 14, 1980. At this level, plaintiff basically admits the charges, but also alleges that he had been entrapped and tricked by the agent.

Finally, on December 31, 1980, based on all the evidence and reports obtained, including plaintiff's admission, the original one-year suspension was sustained by Mr. M. Valdivieso, the Review Officer, pursuant to 7 U.S.C. 2021. Section 2021 provides that a store may be suspended from participation in the Food Stamps Program for a period of time, or fined under certain circumstances, for violations of the statute. The period of suspension is to be determined by regulations promulgated by the Secretary of Agriculture.[3]

Plaintiff timely filed this motion for *de novo* review before this Court, pursuant to 7 U.S.C. 2023. Defendant has also filed an affidavit and moved for summary judgment under F.R.Civ.P. 56.

In determining whether summary judgment is appropriate in the present case, the Court must "look at the record ... in the light most favorable to ... the party opposing the motion...". *Poller v. Columbia*

---

1. The thrust of plaintiff's opposition for summary judgment is that although he admits that he sold ineligible non-food items with food stamp coupons, he was tricked or entrapped by a government agent since he induced him by persistent attitude to sell him non-eligible items stating that they were for a person of advanced age who lived in the area and who did not have any money to buy cleaning materials, and that due to the pressure of the customers present there near the lunch hour plaintiff finally acceded to sell the ineligible items to the undercover agent.

2. Plaintiff accepts selling ineligible items with food stamp coupons, except the bottles of Llave Supremo rum, as alleged by defendant.

3. 7 C.F.R. 278.6(e)(2) (1980) states in pertinent part:

"Penalties. FNS shall take action as follows against any firm determined to have violated the Act or regulations. The FNS regional office shall:

" (1) * * *

"(2) Disqualify the firm for 1 year if: (i) The evidence shows that: (A) It is the firm's policy to sell expensive or conspicuous non-food items, cartons of cigarettes, or alcoholic beverages, in exchange for food coupons, and the firm has engaged in such practices, or . . . ."

*Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). Also, the Court must allow all inferences favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "These rules must be applied with recognition of the fact that it is the function of summary judgment, in the time hallowed phrase, to pierce formal allegations of facts in the pleadings. . . .", *Schreffler v. Bowles*, 153 F.2d 1, 3 (10 Cir., 1946), and to determine whether further exploration of the facts is necessary. *Briggs v. Kerrigan*, 431 F.2d 967, 968 (1 Cir., 1970).

Furthermore, F.R.Civ.P. 56(c) establishes a bifurcated standard to govern summary judgment motions. Under this rule, a court shall render judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that (1) there is no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law.". *Hahn v. Sargent*, 523 F.2d 461, 464 (1 Cir., 1975), cert. denied 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976); *Maiorana v. MacDonald*, 596 F.2d 1072 (1 Cir., 1979).

The record in this case reveals no genuine issue of material fact and establishes that plaintiff did violate the regulations of the Food Stamps Program. Plaintiff's only argument, advanced in his opposition to summary judgment, is that the investigation performed by defendant constituted entrapment. This defense assumes that the act charged was indeed committed; however, defendant claims acquittal because of the government representative's actions in relation to him.

The doctrine of entrapment as developed in the courts of the United States is generally circumscribed to criminal actions. *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct.

210, 77 L.Ed. 413 (1932). Thus, entrapment, as defined in the *Sorrells* case, *supra*, at page 442, 53 S.Ct. at 212, occurs when the criminal doing originates with the officials of the government and their implanting in the mind of an innocent person the disposition to commit the alleged offense and inducing its commission in order that they may prosecute. The purpose of the doctrine of entrapment is to avoid criminal punishment for defendant who has committed all elements of a criminal offense, but was induced to commit them by the government. However, the entrapment defense has a limited application, the basic thought being that the officer of the law shall not incite crime merely to punish the offender. *Sorrells v. United States, supra*. The rationale behind this defense is that extreme forms of inducement are socially offensive and should defeat any prosecution based thereon. *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

Under the law of this Circuit it is clear that the issue of entrapment does not arise until a defendant admits commission of the crime charged, but asserts that the offense was instigated by the actions of the law enforcement officers. *Sylvia v. United States*, 312 F.2d 145, 147 (1 Cir., 1963); *Kadis v. United States*, 373 F.2d 370 (1 Cir., 1967); *United States v. Rodrigues*, 433 F.2d 760, 761 (1 Cir., 1970); *Tzimopoulus v. United States*, 544 F.2d 1216 (1 Cir., 1977); *United States v. Caron*, 588 F.2d 851 (1 Cir., 1978).[4]

According to the federal jurisprudence, the defense of entrapment is apparently non-available in the federal civil litigations and is limited only to criminal actions. However, in some state litigations the defense of entrapment has been limitedly used in administrative proceedings. The instances where the entrapment defense has been permitted are quasi-criminal pro-

---

**4.** All the above cited cases are circumscribed to the criminal context. However, a research into the available sources revealed that in the case of *Gromacki & Gromacki, d/b/a Big Chief Food Center v. United States Department of Agriculture Food and Nutrition Service*, Civil Action No. 79–1740–F, the United States District Court for the District of Massachusetts, Slip Opinion December 19, 1980, the issue of the entrapment was advanced in a Food Stamps case, but was not considered by said court since plaintiff offered no authority to support his argument.

ceedings involving such things like the revocation of medical or dental licenses or license suspension for the operation of a liquor store. These are quasi-criminal proceedings in their nature because they are intended to be punitive and a warning for others who may incur in this particular misconduct. *Jones v. Dental Commission*, 109 Conn. 73, 145 A. 570 (1929); *Peters v. Brown*, 55 So.2d 334, at 336 (Fla., 1951); *In re Davison*, 64 Nev. 514, 186 P.2d 354, at 357 (1947); *Langdon v. Board of Liquor Control*, 98 Ohio App. 535, 130 N.E.2d 430 (1954); *Ray v. Board of Liquor Control*, 154' N.E.2d 89 (Ohio App., 1958); *In re Horwitz*, 196 N.E. 208, 360 Ill. 313 (1935); *Roberts v. Illinois Liquor Control*, 206 N.E.2d 799, 58 Ill.App.2d 171 (1965).

The Food Stamp Act of 1964 (7 U.S.C. 2011, et seq.) was enacted by Congress to provide federal funds to permit low-income families to purchase a nutritionally adequate diet. Thus, the Food Stamps Program is a federal program with a direct impact towards the protection of the needy and low-income families. *Stewart v. Butz*, 356 F.Supp. 1345, 1349 (W.D.Ky., 1973). This program was designated to increase the better utilization of food in establishing and maintaining adequate national levels of nutrition and to promote a better distribution of the agricultural abundance that will strengthen the United States economy. *U. S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). Thus, the purpose of the enforcement provisions contained in the Food Stamps Program is to protect the program, and consequently, the public in general. Therefore, this administrative proceeding is quite different to an administrative proceeding of a quasi-criminal nature, where the purpose is to punish the malfeasor. The enforcement provisions of the program are not punitive, but rather protective and bear no close similarity to the aims and objectives of criminal law enforcement, nor to an administrative proceeding of a quasi-criminal nature. Therein the defense of entrapment is not available to plaintiff since plaintiff's disqualification from the Food Stamps Program does not prevent him from engaging in his business. He may continue to operate his store and sell the very same items he had been selling before. The difference in plaintiff's situation is that he may no longer accept food stamps coupons in exchange for food items. Thus, as to this respect, the administrative proceedings in the Food Stamps Act are not punitive as in the quasi-criminal proceedings, but rather protective, since the enforcement provisions contained in the Food Stamps Act are to protect the Program from violators. Also, the administrative proceedings involved therein do not imply in any way that plaintiff would not be permitted to engage in his business. Furthermore, plaintiff may submit an application to participate again in the Food Stamps Program, subject to the Secretary's approval, after the period of disqualification from the program is completed. 7 U.S.C. 2017, 7 C.F.R. 278.1.

■ In sum, the reasons for not considering plaintiff's defense of entrapment in the present case are that the administrative proceedings contained in the Food Stamps Act are designed mostly for the protection of the Program, and more important, said Program is directed to maximize the national utilization of food, to maintain a properly fed population, and strengthen the agricultural economy of the United States.

■■ As to the sanction imposed by the Food Nutrition Service, the same is valid. We found that the violations charged did in fact occur and that the reasons offered by plaintiff were relevant only in explanation, but not in the denial of the violations, leaving the district court with only the disposition of legal issues. The district court has the authority to reduce the penalty if it finds that the action is not warranted in' law or in fact, or if the action of the Department of Agriculture was arbitrary or capricious. *Kulkin v. Bergland*, 626 F.2d 181 (1 Cir., 1980); *Bruno's, Inc. v. U. S.*, 624 F.2d 592 (5 Cir., 1980); *Cross v. United States*, 512 F.2d 1212 (4 Cir., 1979). However, the sanction is subject to a very limited judicial review and requires only evidence on the retailer's violation of any of

the Food Stamps Act or the regulations issued pursuant to the Act. *Kulkin v. Bergland, supra.*

■ Turning to the case at bar, plaintiff has advanced neither fact nor argument so as to place in doubt the propriety of the sanction imposed by the Food Nutrition Service. The Court's review of the statute and regulations shows that the defendant was within its discretion in disqualifying plaintiff for one-year period. 7 U.S.C. 2021; 7 C.F.R. 278.6(e)(2) (1980). The affidavit of defendant states that plaintiff sold conspicuous non-food items in exchange for food stamp coupons in five different occasions. Again, there is nothing in record to rebut this assertion.

THEREFORE, the Court concludes that there is no genuine issue as to any material fact in the record before it, and review of the applicable statutes and regulations indicate that defendant is entitled to judgment as a matter of law. *Kulkin v. Bergland, supra.*

IT IS SO ORDERED.