Fathi Ismael YOUSEF and Ibrahim M. Mashni, d/b/a John's Grocery Store, Plaintiffs,

v.

UNITED STATES of America and United States Department of Agriculture, Food and Nutrition Service, Defendants.

No. 85–399–CIV–ORL–18.

United States District Court, M.D. Florida, Orlando Division.

Nov. 14, 1986.

tive phase of the case. Extra time was also required to address the fee issues the court now decides.

Mark E. NeJame, Orlando, Fla., Gary J. Boynton, Winter Park, Fla., for plaintiffs.

Walter J. Postula, Asst. U.S. Atty., Orlando, Fla., for defendants.

## ORDER

GEORGE KENDALL SHARP, District Judge.

This action, contesting plaintiffs' permanent disqualification from the food stamp program, administered by the United States Department of Agriculture, Food and Nutrition Service (FNS), is before the Court upon defendants' motion for summary judgment. Previously, the Court held an evidentiary hearing on plaintiffs' motion for preliminary injunction, which was denied.

### STATEMENT OF FACTS

Plaintiffs Yousef and Mashni own and operate John's Grocery Store, located in a low-income, predominately black area of Orlando. By signing the application for the food stamp program on July 19, 1982, Yousef certified that he understood the program regulations; that all employees would comply with those regulations; that FNS could revoke program participation for violations by any employees; and that he had authority to contract for the firm. Evelyn K. March of FNS testified at the preliminary injunction hearing that she telephoned Yousef on July 27, 1982, to explain the FNS regulations required for participation in the program and that Yousef understood these regulations.

March testified that she visited John's Grocery on October 27, 1982, and that she reiterated to plaintiffs/co-owners the applicable regulations. She emphasized that food stamps were to be used for "eligible food items only" and "that any other use of the food stamps is a violation" of FNS regulations. She testified that plaintiffs understood her explanation.

A January 26, 1983 police report indicates that two undercover officers offered to sell plaintiffs a video recorder, an electric calculator, a gold chain, and food stamps valued at $120.00. All of these items were represented as stolen. The re-

port states that plaintiffs took the officers to a car parked in the rear of the store parking lot. Mashni and the officers sat in the car where Mashni purchased the video recorder, the gold chain and the food stamps "[a]fter being advised numerous times that the property was stolen." Mashni paid $60.00 for the food stamps. While Mashni transacted the sale, Yousef stood outside the car on the passenger side and discussed the gold chain.

Based upon the food stamp purchase, the resulting FNS charges and the reply of plaintiffs' attorney, the FNS Regional Director notified plaintiffs of their permanent disqualification from the food stamp program on October 29, 1984. FNS took this action in accordance with 7 C.F.R. § 278.-6(e)(1)(i) (1983), which permits the FNS regional office to disqualify permanently a firm if "[p]ersonnel of the firm have purchased coupons or trafficked in coupons or ATP cards...." Plaintiffs requested review of their disqualification, and an FNS Administrative Review Officer informed plaintiffs' counsel by a November 26, 1984 letter that their disqualification from the food stamp program would be delayed pending his review. On February 25, 1985, the Administrative Review Officer notified plaintiffs of the final determination to disqualify them from participation in the food stamp program and directed their attention to the penalty for trafficking:

> Trafficking. A firm has an affirmative duty to prevent trafficking on its premises. The purchase of any amount of food stamps or Authorization to Participate (ATP) cards for any amount of cash shall warrant permanent disqualification, regardless of whether or not the firm benefited from the violation, or the owner or management of the firm had knowledge of the violation.

FNS Instruction 744–9, paragraph IV A.3. Plaintiffs filed their complaint in this action on March 29, 1985, and a motion for preliminary injunction on December 23, 1985.

At the February 4, 1986, preliminary injunction hearing, plaintiffs presented testimony from their food-stamp customers. While these individuals acknowledged that John's Grocery is convenient, the testimony elicited that there are at least five other groceries that accept food stamps within approximately one to one and a half miles from John's. Defendants represented that one of these accessible stores, Winn Dixie, redeems the largest volume of food stamps in Orange County.

With respect to financial detriment to plaintiffs because of the loss of food-stamp trade, plaintiffs' certified public accountant testified that plaintiffs did not realize a profit until 1984. Plaintiffs' gross sales averaged $42,000.00 per month for the first four months of 1985, and ended with $35,-000.00 sales in December, 1985. Interestingly, plaintiffs' highest gross sales of $45,-000.00 occurred in March, 1985, following their disqualification from the food stamp program in February, 1985. Furthermore, plaintiffs' accountant testified that he did not know what portion of the 1985 sales were attributable to food-stamp trade.

Finding no irreparable injury to plaintiffs or to their customers requisite to stay the FNS disqualification and, furthermore, no showing that the purchase of discounted food stamps did not occur or that the FNS sanction was arbitrary or capricious, the Court denied plaintiffs' preliminary injunction motion. Plaintiffs pursue trial de novo by presenting the Court with essentially the same arguments advanced and addressed in their preliminary injunction endeavor.

By respective affidavits, plaintiffs still contend that Mashni had a limited knowledge of English and that he did not understand the food-stamp transaction. In its February 7, 1986 order following the preliminary injunction hearing, the Court specifically found that "[t]he testimony did not indicate that Mashni had any difficulty comprehending English." In their response to defendants' summary judgment motion, plaintiffs argue that "plaintiffs ... [were] enticed to commit the alleged crime," but concede that entrapment "is typically not available" in federal court.

Furthermore, plaintiffs admit in their response to defendants' motion for summary judgment that Yousef and Mashni are partners in John's Grocery, but contend, in defiance of the police report, that "[p]laintiff, Mr. Yousef, was not a participant nor was he in presence nor did he have any knowledge of the alleged Food Stamp transaction which allegedly involved the plaintiff, Mr. Mashni." Plaintiffs also challenge their disqualification from the food stamp program as arbitrary and capricious, but stipulate to the FNS rules and regulations in administering food stamp programs in the joint pre-trial stipulation.

Defendants' summary judgment motion asserts that plaintiffs have produced no evidence to rebut the alleged purchase of discounted food stamps and that their FNS disqualification from further participation in the food stamp program was the appropriate sanction for unlawful trafficking in food stamps.

## CONCLUSIONS OF LAW

The Court has jurisdiction of this action pursuant to 7 U.S.C. §§ 2021, 2023 (1982), which provides de novo review by the district court of the validity of FNS administrative action. FNS may disqualify a food store from participation in the food stamp program upon a determination "that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter." 7 U.S.C. § 2021(a). "Disqualification" under 7 U.S.C. § 2021(a) "shall be ... permanent upon ... the first occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store or wholesale food concern." 7 U.S.C. § 2021(b)(3). The penalty of permanent disqualification for trafficking, whether or not the firm benefited or the owner or management had knowledge of the violation, also is contained in FNS Instruction 744–9, paragraph IV A.3, the knowledge of which plaintiffs were charged as food-stamp-program participants.

"The party seeking judicial review has the burden of proving facts to establish that he was entitled to relief from the disqualification determination, and must establish the invalidity of the agency action by a preponderance of the evidence." *Modica v. United States*, 518 F.2d 374, 376 (5th Cir.1975); *Goodman v. United States*, 518 F.2d 505, 511 (5th Cir.1975); *Redmond v. United States*, 507 F.2d 1007, 1011–12 (5th Cir.1975); *see Plaid Pantry Stores, Inc. v. United States*, 799 F.2d 560, 563 (9th Cir.1986) (per curiam); *Han v. Food & Nutrition Service of the United States Department of Agriculture*, 580 F.Supp. 1564, 1567 (D.N.J.1984); *Bush v. United States*, 473 F.Supp. 715, 717 (E.D.Pa.1979). Furthermore, a district court has held that "[f]ailure on the part of the plaintiff to meet this burden will require the reviewing court to uphold the administrative determination." *Han*, 580 F.Supp. at 1567.

Plaintiffs' argument, perpetuated by affidavits, that Mashni had limited comprehension of English was discredited by the Court pursuant to the preliminary injunction hearing. Apparently, plaintiffs continue to contend that Yousef had no knowledge of or participation in the food stamp transaction. Plaintiffs, however, have not asserted that Yousef had a deficient understanding of English. Not only does FNS Instruction 744–9, paragraph IV A.3 not require knowledge or benefit by the owners, but also federal courts have upheld food stamp disqualifications although violations were committed by other employees and there was no involvement or knowledge by the owner. *See, e.g., Wolf v. United States*, 662 F.2d 676 (10th Cir.1981); *Kulkin v. Bergland*, 626 F.2d 181 (1st Cir. 1980); *Yaghnam v. United States*, 526 F.Supp. 554 (D.Colo.1981).

Even more incredible than plaintiffs' contention that Yousef had no knowledge of or participation in the purchase of discounted food stamps is their claim in their response to defendants' summary judgment motion that he was not in the presence of the transaction. This argument, which contradicts the police report,

has not been raised previously. In affirming summary judgment in a similar case, the former Fifth Circuit held that the "eleventh-hour denial" of the store's violations when appellant already had admitted "implicitly and explicitly" the store's wrongdoing did not create "a disputed issue of fact sufficient to require a trial on the merits." *Modica*, 518 F.2d at 376. Given the clandestine manner in which plaintiffs purposefully took the undercover officers to a car in the rear of the store parking lot to purchase the food stamps and the heretofore unquestioned police report, the Court concludes that Yousef was present and that he did have knowledge of the transaction.

Additionally, the defense of entrapment generally is limited to criminal actions in order to protect a defendant from criminal punishment when the offense was induced by a law enforcement officer. *Sorrells v. United States*, 287 U.S. 435, 451–52, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932); *Rodriguez v. United States*, 534 F.Supp. 370, 373–74 (D.P.R.1982). Because enforcement of provisions of the food stamp program are protective, not criminally punitive, and because disqualification does not prevent plaintiffs from engaging in their business, the defense of entrapment is not available to plaintiffs. *Rodriguez*, 534 F.Supp. at 374.

Furthermore, the Court is precluded from overturning an FNS administrative decision, which is supported by substantial evidence. *See Smith v. United States*, 392 F.Supp. 1116, 1119 (W.D.La. 1975). In this circuit, the scope of the Court's review of an FNS sanction is the arbitrary and capricious standard. *Bruno's, Inc. v. United States*, 624 F.2d 592, 594 (5th Cir.1980); *Goodman*, 518 F.2d at 511–12. An FNS sanction is arbitrary and capricious "'if it is unwarranted in law or without justification in fact.'" *Bruno's, Inc.*, 624 F.2d at 594 (quoting *Goodman*, 518 F.2d at 511). Not only does the Court

find the FNS determination factually correct but also the sanction of permanent disqualification is required for trafficking in food stamps. 7 U.S.C. § 2021(b)(3); 7 C.F.R. § 278.6(e)(1)(i); FNS Instruction 744–9, paragraph IV A.3. Therefore, the Court upholds the FNS sanction, which permanently disqualifies John's Grocery from participation in the food stamp program.

"Despite the trial de novo provision, it is clear that summary judgment is a proper means of disposing of requests for review under section 2022 [now § 2023] where there are presented no genuine issues of material fact." *Modica*, 518 F.2d at 376; Fed.R.Civ.P. 56(c); *see Kulkin*, 626 F.2d at 183; *Rodriguez*, 534 F.Supp. at 372–73; *J.C.B. Super Markets, Inc. v. United States*, 57 F.R.D. 500, 503 (W.D.N.Y.1972). The Supreme Court recently has clarified the "'genuine issue' summary judgment standard" of Federal Rule of Civil Procedure 56(c), (e). *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, —— U.S. ——, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "By its very terms [Rule 56(c)], this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 106 S.Ct. at 2510 (emphasis in original).

Summary-judgment analysis centers on the definitions of the adjectives "genuine" and "material." "Genuine" is defined as evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Williams v. Georgia Department of Human Resources*, 789 F.2d 881, 883 (11th Cir.1986) (per curiam) (acknowledging the "genuine issue for trial" consideration). "[M]erely colorable" or "not significantly probative" evidence is insuffi-

cient to prevent summary judgment. *Anderson,* 106 S.Ct. at 2511. "Material" refers to "the substantive law's identification of which facts are critical and which facts are irrelevant that governs" or "a criterion for categorizing factual disputes in their relation to the legal elements of the claim. ..." *Id.* at 2510.

Corresponding to directed-verdict analysis, a summary judgment motion "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 2512. The trial judge's inquiry is "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.... Whether a jury could reasonably find for either party, however, cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant...." *Id.* at 2512–13. Therefore, at the summary-judgment stage, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Id.* at 2514. On the facts presented in this case and the applicable law, the Court concludes that there are no genuine issues of material fact. Even with the benefit of an evidentiary hearing, plaintiffs have not established that the FNS determination is factually incorrect and that disqualification is not the required sanction.

Given defendants' properly supported summary judgment motion, plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" or "affirmative evidence." *Id.;* Fed.R.Civ.P. 56(e). The Court concludes that plaintiffs have not "present[ed] evidence from which a jury might return a verdict in ... [their] favor." *Id.*

Accordingly, defendants' motion for summary judgment is GRANTED. Defendants' motion to quash the trial subpoena of Charles Lynch by plaintiff is MOOT.